JUSTICE WARNER,
concurring and dissenting.
¶81 I concur with the Court that the judgment convicting Rosling of the offenses of deliberate homicide, aggravated burglary, tampering with or fabricating physical evidence, and criminal possession of dangerous drugs must be affirmed. I, however, would vacate Rosling’s conviction for the offense of aggravated kidnapping.
¶82 Under the Court’s holding today, almost every murder could justify a kidnapping charge. Generally speaking, murders typically take place away from other people — that is, in places of isolation. Also, in any murder where death is not instantaneous, the victim has necessarily been restrained. Indeed, as noted by other courts, taken to its logical extreme, the very act of killing another person is the ultimate form of restraint. See Wash. v. Green, 616 P.2d 628, 636 (Wash. 1980). Such an approach undermines the concept of kidnapping.
¶83 The purpose of a kidnapping statute, such as § 45-5-303, MCA, is to criminalize the act of kidnapping, an offense where the movement or secreting of the victim is a criminal end in itself:
“[I]t is desirable to restrict the scope of kidnapping, as an alternative or cumulative treatment of behavior whose chief significance is robbery or rape, because the broad scope of this overlapping offense has given rise to the serious injustice .... The blame cannot be placed exclusively at the door of the prosecutor for choosing to indict for kidnapping. When an especially outrageous crime is committed there will always be public clamor for the extreme penalty which the laws permit, and it is precisely the obligation of penal legislators to minimize opportunities for such injustice by clearly and rationally restricting discretion to punish .... It is necessary, therefore, to define an aggravated offense of kidnapping which shall consist of removal or confinement involving substantial isolation of the victim where the duration of the isolation, the intention of the kidnapper, or other circumstances makes the behavior specially terrifying and dangerous.”
N.J. v. Tronchin, 539 A.2d 330, 333 (N. J. 1988) (quoting Final Report of the New Jersey Criminal Law Revision Commission, Final Report, Vol. II at 181-183, § 2C:13-1 (1971)).
*27 ¶84 Indeed, § 45-5-303(1)(c), MCA, states that the restraint must be for the separate purpose of inflicting injury or terrorizing the victim. While the instant offense was horrific, there is no evidence that moving Dooley within the house had any purpose other than to complete the offense of deliberate homicide. Instead, the evidence shows that the movement between two rooms was only a part of the same attack resulting in her death.
¶85 Because we have not previously dealt with this issue raised by Rosling, it is appropriate to look at how other jurisdictions have approached the question. Courts have struggled with whether movement of a victim during the commission of one crime can also constitute the separate offense of kidnapping. See Frank J. Wozniak, Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping, 39 A.L.R.5th 283 (1996). Still, most courts hold kidnapping statutes do not apply to unlawful confinements or movements of the victim that are incidental to the commission of the other crime. Md. v. Stouffer, 721 A.2d 207, 212 (Md. 1998) (quoting Wozniak, 39 A.L.R.5th at 356); see also e.g. Green, 616 P.2d 628; N.M. v. Vernon, 867 P.2d 407 (N.M. 1993) (movement of victim by car to a remote location was incidental to victim’s homicide and, thus, was not kidnapping); Minn. v. Smith, 669 N.W.2d 19 (Minn. 2003) (defendant blocking doorway during attack on victim was incidental to the actual homicide and, thus, not sufficiently criminally significant to warrant kidnapping charge); Cal. v. Sheldon, 771 P.2d 1330 (Calif. 1989) (movement of victim from garage into home too slight to constitute kidnapping); N. C. v. Cartwright, 629 S.E.2d 318 (N.C. App. 2006) (evidence insufficient to support conviction of kidnapping where defendant attacked victim in kitchen, then transported her to den). A bright-line rule is difficult to formulate and, thus, most cases turn on the particular circumstances:
The one thing that seems clear from the decisions following the majority view is that most of them are fact-specific. Whether the confinement or movement of the victim is merely incidental to another crime depends, in nearly every case, on the circumstances .... If the victim is not moved too far, is not held for longer than is necessary to complete the other crime, and is not subjected to any significant peril from the confinement or movement itself, if the confinement or movement can reasonably be viewed as undertaken solely to facilitate the commission of the other crime, and if commission of the other crime normally involves (even if it does not legally require) some detention or asportation of the *28 victim, the court is likely to conclude that the confinement or movement was merely incidental to the other crime and thus reverse a separate kidnapping conviction. If any of those factors are missing, however, there is a greater prospect of the court sustaining a separate kidnapping conviction.
Stouffer, 721 A.2d at 213-14 (citing In re Earley, 534 P.2d 721 (Cal. 1975); S.D. v. Lykken, 484 N.W.2d 869 (S.D. 1992)).
¶86 In this case, Dooley was not moved very far, only from her bedroom to her bathroom. There is no evidence that she was restrained for any longer than was necessary to kill her. Likewise, there is no evidence that she was restrained by being confined within either the bedroom or the bathroom. She was not subjected to any additional peril because she moved from one room to the other. It appears that the movement from the bedroom to the bathroom was only to facilitate the homicide. In addition, deliberate homicide by inflicting 100 stab wounds requires restraint of the victim only for long enough to accomplish the goal of death. In this particular case, all of the evidence indicates that the movement of Dooley between the bedroom and bathroom of her house was incidental to her homicide.
¶87 Nor is there evidence that the bathroom, with the door open, was intended to be a place of isolation. Likewise, there is no evidence Rosling had any purpose other than to kill Dooley when she was somehow moved from her bedroom to her bathroom. Because § 45-5-303(l)(c), MCA, requires that the restraint of the victim be for a purpose separate from, or in addition to, that of killing her and not merely incidental to another crime, the evidence in this case is not sufficient to constitute the offense of both aggravated kidnapping and deliberate homicide.
¶88 In this case, while the attack started in the bedroom and was finished in the bathroom, the State has presented no evidence that moving Dooley to the bathroom had any particular end in itself, which § 45-5-303(1)(c), MCA, requires.
¶89 I conclude the evidence is insufficient to establish that Rosling restrained Dooley and moved her within the house for the purpose of secreting or holding her in a place of isolation to inflict bodily injury or terrorize her. Thus, Rosling’s motion for a directed verdict on the charge of aggravated kidnapping should have been granted and I dissent from the Court’s decision not to vacate that portion of the judgment convicting Rosling of aggravated kidnapping.
JUSTICES COTTER and MORRIS join in the foregoing concurrence and dissent.